Our next case this afternoon is Ezell v. BNSF Railway Company, number 19-6018. Counsel may proceed. Good afternoon. May it please the court, counsel, my name is Rich Carlson. I represent the appellant plaintiff here, Mr. Ezell. We're asking that this court reverse the granting a summary judgment dismissing his FELA, Federal Employers Liability Act, lawsuit. The district court, where they were, I don't understand the course that they took. There was two claims brought. There was a Safety Appliance Act, and then a general negligence claim based on failure to publish, to instruct, and to enforce safety rules, and also failure to provide proper tools. Now in the summary judgment motion, the railroad brought it on all claims. We did not dispute or resist the Safety Appliance Act. In other words, this rail car that our client climbed up on and fell off of, we did not dispute that that car, it complied with the Safety Appliance Act itself and all regulations, FRA regulations. However, an SAA claim is much narrower than our FELA negligence claim, and that is based on whether the railroad exercise reasonable care. Now in its holding, this is what the court held. It said, the court finds that the undisputed evidence shows that BNSF fulfilled its duty to provide Ezell with a safe place to work and with adequate and reasonable safe tools and equipment. Ezell admits that the rail car and ladder issue were in proper condition and had no defects. Additionally, his expert Colin Folk testified that climbing a rail car is a regularly performed function of a conductor and that the task of determining whether the rail cars were load or empties was a task that could be safely performed by that method. What is disturbing to me is that they never addressed our failure to to publish, to that is a separate issue, and that is important here because with respect to the issue, and a duty of care is triggered by foreseeability of risk of harm, and by adopting certain safety rules and regulations, or excuse me, safety rules and procedures, that is a railroad's acknowledgement that there's something unsafe and we're addressing this issue by implementing these rules. Now the rules I'm talking about is an engineering rule, number one, that's and just to backtrack, our client was told to, there was a ballast train or work train that was carrying cars full of ballast that is used to, goes between ties, it stabilizes the tracks and whatnot. He was told by his his boss, Council, before you get too far away from Mr. Firk, yeah, it was the expert presented, he said that Mr. Firk said that climbing on the side of the car was a normal responsibility and not an unreasonable risk, correct? That's what our expert said, you are right, yes, I'm not going to deny that. So do you have any expert evidence to show negligence? I mean that's what Mr. Firk said, so if you got anything else by way of expert evidence to show negligence? Specifically with climbing on the rail car, no. Okay, but we do have, and again, we have to live with what our expert testified. So you moved on to the question of whether Mr. Rizzo was required to receive a list? Yes. Okay, and is, and there's a rule? Yes, there is. To that effect? There is, and specifically, Your Honor, it's an engineering field, an engineering field manual rule 8.5.2, titled unloading ballast, which requires maintenance away crews, or those of the crews that do the work. It requires them to, number one, make sure ballast cars are empty with the doors properly closed and locked before releasing the cars, and see that's what, these cars are moving along and they're taking the ballast out. Okay, so then number two, it says keep a good list of car numbers and release them properly. So when these maintenance way people are, when a ballast car is empty, they are to market. Now, then that goes in combination. It's called a TY&E Safety Rule S1-1.215, which is, covers transportation employees like Ezel and like the conductor who he relieved. See, he was relieving another conductor who had been working on that train, and it says it requires that train crews comply with all company engineering instructions, and that's exactly what this field manual rule is. And then lastly, it's General Code of Operating Rule 1.47 provides conductors are reason, that provides conductors are responsible for the freight carried by the train, and conductors must maintain any required records. So the point being is that the BNSF had in place this rule, these rules that required a list be provided to the employee, a conductor who relieved, so he knows, you know, what is empty and what is not. And Ezel was told that he was to separate out, they brought this train into a yard, and he was told to separate out the empties from the loads, because then they take those loads, and then that maintenance crew would then use those for further work. So Council, if you had a list showing which cars were full and which cars were empty, it'd be safer just to read off the list and follow the list and climbing up the side of the car, but how do we get from there to the railroad being negligent? Well, you look at Fulton, which is a case, 10th Circuit case, and that says that evidence or safety rules and regulations or industry standards doesn't set a standard of care, but that is evidence of negligence that may be considered. And again, well were those cases that were like in this case, where the district court said there's several available methods to determine which cars have loads and which are empty, and your expert said that the method that they used here, while it might not have been the safest method, was reasonably safe and was typical, and a typical task to be performed by a conductor. So the district court then relied on these out that said the railroad's not obligated to provide the safest method or to mandate the safest method be used as long as the method used was reasonably safe. I don't think that, does Fulton consider that concept? It doesn't, it doesn't, but and then just to take Fulton a step further than Robinson, which was decided in 94 again by the 10th Circuit, they cited to Fulton and they decided to, and it was a non-FILA case, and they cited to it that, you know, that those rules, even if they impose a standard beyond a reasonable person standard, they may be considered as evidence of negligence. Now, and so my argument centers on that by the very fact that they implemented these rules, no matter what our experts said, the fact that they implemented these rules, that that was a indication that they, that climbing these ladders creates a trip, fall, risk of injury, and and we offered evidence and there was some discussion about this break stick. Now, you know, whether that's a reasonable tool that the railroad should have provided, that's not the real point. I think the more important point was that the safety manager in a BNSF periodical, they said this is a game changer. This, and what a break stick does is it, a break, hand break can be by conductors rather than climbing the ladder. So they said this is a game changer. So again, this is acknowledgment that climbing those cars, although done often, that is a risk of harm. Well, and we're going to implement. Counsel, if a court could hold the railroad liable for promulgating methods that may be safer than a method that was used, but the method that was used does not pose an unreasonable risk. If a railroad could be held liable for going extra, extra miles, so to speak, why would the railroad ever do that? Well, your honor, in this case, I would say if the railroad had not implemented any of these safety rules, then you're right. But they did. And as Robinson stands... Well, one of the railroad employees who was deposed, Mr. Castleberry, said that providing a list, for example, was best practice. But he didn't say it was an absolute requirement. But, your honor, that may well be... I mean, is that right? If I got his testimony right, I don't want to... You did. You did. It was best practice. And I'm, but, but my point is that look at these other rules. The field manual rule that, that requires that list be kept. That the T, Y, and E must comply with that. If this... So, so the question to me is, or excuse me, my argument is that under Robinson, that, that duty of care may be ratcheted up by the railroad if they choose to implement certain rules. And here... Can you tell me how, how the list works? Let's say that they, the railroad had done just as you say. Someone would have kept track and would have done a list. Would that someone have gone up and down the ladder, just like Mr. Rizzo? No, because the maintenance away people are, are working along and they're releasing and they're emptying out the, the ballast. And when that car's done, oh, we're gonna go to the next car and so on and so on. So with that, that's how they keep track of that. And was there evidence that in fact Mr. Rizzo did get a list, specifically Mr. Miller? Yeah, I believe the undisputed evidence that there was no list provided to him by the maintenance away crew or the conductor who he relieved. But Mr. Miller, his co-worker, did provide him a list. Mr. Rizzo doesn't remember, but he's not disputing. And then that comes to the springs of the cars are compressed and that should know. But the problem with that is because, the problem with that is that Mr. Rizzo was under the impression or was told by an a supervisor previously, it's got to be 50% or more. Whereas Castleberry really didn't know. He said it could be any amount, 10%. So this is where you have some, Mr. Rizzo wasn't given from the very beginning Castleberry, Mr. Castleberry gave him that the assignment, but he failed to clarify what is a load. Could Mr. Rizzo have maintained four points of contact and looked inside to see whether or not there was still ballast? I believe he could. He could have. But that goes to his contributory negligence and there's a sole cause defense. But it's a pure comparative fault. Negligence, comparative negligence or contributory negligence does not does not bar, it just reduces the amount. But if he could have maintained four points of contact, then it's hard to see how anyone could fall off a ladder with four points of contact. And so how do you even get comparative? Well because he was on the ladder because he was not instructed as to what is a load. I'll reserve my brief time for rebuttal. Thank you. Thank you. Good afternoon members of the panel. George Mullick on behalf of BNSF Railway, Eppley in this case. This case presents this court with the opportunity to better delineate what the standard is for a proper showing of breach of a duty under a negligence standard versus causation in an FELA context. In 2013, this court in an unpublished decision upheld the grant of summary judgment out of the Eastern District of Oklahoma, where I'm from, in a case called Volner. And in that case, the court specifically found in keeping with McBride that had come out two years earlier, that indeed there is a relaxed standard of causation under the FELA. But it went on further to note and I quote the relaxed causation standard under FELA does not affect his obligation to prove the Union Pacific was in fact negligent. Went on to note that the FELA is not a workers' compensation statute. Now since Volner in an unpublished decision was promulgated in 2013, it's been cited by the Third Circuit, the Sixth Circuit, and six district courts sitting within the Tenth Circuit to include the court underneath. But still yet there appears to be, among practitioners at least, a confusion as to what is actually relaxed under the FELA. Is it the duty component of what a proximate cause or what would a prima facie case must demonstrate or is it causation? Indeed in the reply brief in this case, plaintiffs cited to the recent published opinion of this court, the Schulenberg decision, to stand for the proposition that there is both a reduced standard as to causation and negligence. And that's not what Schulenberg stands for and certainly not what Volner stood for as well. This case presents a bright line set of facts to establish a clear point of law. Mr. Izzell had multiple ways to accomplish the task that he was set out to do that day. His job was simple. It's what conductors do every day. Separate loads from empties. And on a rock car that's easy to do because rock is very heavy and it impacts on the springs very discernibly. The testimony from Mr. Izzell all the way up to the train master at that yard in Enid, Oklahoma all testified that the way that we sort rock trucks is by looking at their springs. You know I asked a very open question in deposition. I asked Mr. Izzell what are the ways that a conductor can determine an empty from a load on a rock car? His order that he gave me in response to that very open unsuggesting question was number one spring compression. Number two banging a rock on the side of the car. Number three climbing using the ladder to look inside to verify. Fourth option was a crow's nest which is an elevated platform on a track different from where this rock truck had been set out. And finally finally his fifth option was to use a list of loads and empties. Clearly he was instructed on the ways that the BNSF had determined would be appropriate for him to carry out the task that faced him that day. But you would wouldn't you concede that some of those ways are safer than other ways? No doubt in terms of efficiency using a list is much quicker and would not require climbing onto a car. But I've I've been doing this for 20 years I've never had an expert for the other side admit that the method used that was in fact employed by choice of the plaintiff climbing a side of a ladder was not unreasonably safe. Does it depend how many ladders you climb and what sort of a time period? In other 30 minutes I suspect that 50th time might be dangerous. It it might wouldn't mess with the facts of this case. I believe that the testimony in this case was that this was either his second first or second attempt to climb up a rock car. But here's what's interesting. Their expert Colin Fulk who was with I believe the CSX for many years testified that it's not a common for conductor to be expected climb up on a rail car. They actually ride rail cars by hanging on to the very rungs Mr. Rizzo was using that day. And when a train is moving in a backwards fashion which is called a shove and you have to have somebody ride the car to protect the shove. So they're in and around cars all the time. The main reason a conductor will get on a car is to go up one side cross over to the back end so he's in between cars to set a handbrake. None of that activity was required on the day in question. At most all plaintiff has is that the list that was given to him by Brakeman Miller was not a list he himself felt safe to use to separate loads and then and empties. And so he chose to climb the rail car. And there's nothing that anybody in this case has demonstrated is wrong with a car. It is in fact what they do day in and day out. Well but isn't the quiet maybe this goes to your relaxed standard discussion of a few minutes ago. But so so you have this list of five ways of distinguishing loaded from unloaded and some of the ways are safer than other ways but maybe all of the ways are at least minimally safe. Now if the railroad doesn't have its employees use the safest of those ways can the railroad be negligent? I think the answer to that question has already been answered by the DeSoto Court, the Cito Court, the I grant that those are appellate court decisions outside this jurisdiction but they're very instructive and in fact the Soto Court had a very compelling quotation and it said if this verdict were allowed to stand it would tell the railroad industry that it's unsafe to use wheel barrels particularly wheel barrels that have rubberized wheels and that to do so is inherently unsafe. If this court were to reverse and remand based off the facts presented to this court it would tell the real industry that you can't have conductors climbing an SAA completely compliant rail car and I urge you to look at the pictures in this case. You're not going to find a rock truck like this on the railroad very often. This was a refurbished and in mint condition and most importantly as we look at the reason for this fall it comes down to one item and the courts already addressed it and that is that when he got to the top rung of the ladder and he's like this he's got two feet and he's got two arms and he reaches up with the left and it's a photographs demonstrate on the flange of the top of the rail car where there's tarp appurtenances mainly a rubberized seal that is bolted down that keeps him from being able to reach over maybe claw to grab a grab lift and before making sure that his left hand is secure he lets go of his right. Mr. Ezell and importantly Mr. Fulk both testified that that was violation of the three-point safety rule and that when he let go of his right hand his left hand has no purchase that's when he falls and that is exactly what so causes it is designed to protect against. Counsel does it make a difference though that the railroads engineering field manual does have this requirement I mean it says follow these requirements when unloading ballast cars and says keep a good list of car numbers and release them promptly and their theory as I understand it is that the railroad was negligent because they didn't give him a list and put him in the position of going up on the car when if they'd given him the list he wouldn't have gone up on the car so maybe they there are these different methods some are safer than others but in this instance there seems to be a requirement that the railroad has recognized why why doesn't that give them a negligence argument respectfully if I may I don't think counsel properly describe the process of dumping ballast out in the field ballast require well counsel I'm just going off what's in the record fair enough and it does say requirements it does and I suppose the response to would to that would be the fact that his brakeman upon learning that neither the maintenance way or the off going engineer conductor had maintained a list for whatever reason that occurred in the field that day Devin Miller brakeman who later became a yardmaster boss of the yard went back to the yard and as the train came in he came back in a van that had actually taken the crew out to the workbook that spot he comes back with a van gets a print off of the consist for that rock truck which lists every car in by its serial number not 10 feet from the window he's sitting at is the track that the train comes by at less than 10 miles an hour because it's yard limits and he's looking at every one of those Springs and he's making a list that says ease and L's for empties and loads the testimony from Sean Jernigan who was the yardmaster confirmed that Miller had asked for that consist and that he sat there and watched that train roll by in the window and so mr. azelle gets a list from a member of his crew and hands it to him and that's undisputed no mr. zell says I don't remember it I don't dispute it shernigan jernigan the yardmaster and Miller are quite clear on this point and what's really important on the analysis is that if mr. zell had any question about whether to use that list provided to him by his crew member all he had to do was pick you know they have pack sets radios right there on the chest I had to is pick up the phone and say hey yardmaster conductor on job whatever I got a list here from Miller is it okay to use this list okay let me let me make sure I understand what your response was to the question I'm hearing you say that he was given a list yeah there was no violation of this requirement is that you're giving me a factual response is that correct yes that is correct he was given a list that would have cured any defect of the maintenance away not having giving him a list at the end of the day mr. zell had five options by his own testimony he could have used the Miller list he could have as he's when I asked the dope a question how do you differentiate these cars look at the spring compression could have done that he could have banged on the side of the locomotive car or he could have climbed it there is no testimony from anyone on this case on either side that would suggest climbing a rail car when it's sunny when there's no foreign material to make it slippery there is nothing wrong with a railroad requiring its conductors to climb rail cars in fact mr. Fulton I asked the hypothetical what if Sean Jernigan the yardmaster it said mr. Zell I want you to disregard that list Miller gave you and I want you to inspect every single car to make sure whether it's loaded or unloaded would that be a proper request and he said absolutely and almost gratuitously he said it's the only guaranteed method because mr. Fulton knows very well having been in the practice that when you go dump cars out in the field sometimes door sticks sometimes they don't get fully dumped sometimes you don't need as much gravel in one place as you do another and so you have to sometime visually check if you want to make it accurate so basically your answer that is that even if they hadn't provided a list it's curious still no there's still no negligence that's right because Miller knowing that a list would be helpful took it upon himself to get right back in the van in advance of the train get the consist printed off the computer by the yardmaster and sit there and provide a list of loads and empties and mr. is L in his deposition in thus what I've heard in argument here in Denver has no good explanation as to why he rejected that list how is how's the list put together so the list so every train has a consist and and the consist is a listing of the cars in order that they appear from head to rear and so you get that list and you see JNA X 4 8 3 5 roll by and based on his training mr. Miller observed the Springs again these are rock cars that are very very heavy and if they're loaded then the Springs will demonstrate that that's reason why mr. is L when I asked open a question how do you how do you determine the load from the first thing you said was spring compression that was the method used by mr. Miller as that train was coming in so he's in the yard office mr. Miller is the train goes on down gets in the right track the engineer sets and centers it means that it locks it down and then Miller comes up in the van and he says I got a list I've got your list what if it's 30% full a car well if it's 30% that that begs a little question the only person that my review the record would demonstrate that there are differing standards whether it's 60% or 50% full that came solely from plaintiff plaintiff said that the yardmaster trained him in trainer conductee school that if it's 50% or more then that means that it's there if it's 50% or less then then it's an empty that rock costs money we buy that rock from a quarry so mr. Castleberry and everybody else had demonstrated that if there's enough rock to make a compression the Springs that's a commodity out there that should be used so given that there's been no testimony at the bottom worst-case scenario for BNSF he had to climb a rail car there's no basis to find negligence and we would ask that you join the sixth and the fifth circuits and so finding in a published decision that would give clarity to practitioners both on the employer and the employee side thank you for thank you counsel well my time is short but I want to make a couple points council said that mr. Miller's providing that list cured that rule no it didn't there's a fact question the fact question is and mr. Falk our expert testified that the that the tests used by Miller was subjective so that is a fact question and it is I don't believe that opposing counsel contradicted that there was a felt that with respect to that engineering rule it requires a list so there's a fact question right there whether the cure with that my time is up I have nothing else thank you Thank You counsel case will be submitted and council are excused